IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PATRICK KELLER,

    Plaintiff,

v.

LIZZIE TEGELS, ET AL.,

    Defendants.

OPINION and ORDER

Case No. 18-cv-945-wmc

*Pro se* plaintiff Patrick Keller, a prisoner at Jackson Correctional Institution ("JCI"), filed a proposed civil action under 42 U.S.C. § 1983. Patrick claims that JCI staff and other Wisconsin Department of Corrections ("DOC") employees are violating his right to visitation by continuing to refuse his requests to add his wife and minor children to his visitors list.[1] Along with his complaint, Patrick also filed a motion for a preliminary injunction and a motion for assistance in recruiting counsel. (Dkt. ##2, 7.) Since Patrick was incarcerated at the time of filing this lawsuit, the court must screen it as required by 28 U.S.C. § 1915A. For the reasons set forth below, this complaint will be dismissed and his motions denied for failure to state a claim upon which relief may be granted.

ALLEGATIONS OF FACT[2]

Patrick is seeking to proceed against six JCI employees: Lizzie Tegels, the warden;

---

[1] For ease of reference given the other Kellers involved in this dispute, the court will refer to plaintiff by his first name only.

[2] In addressing any pro se litigant's complaint, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of this order, the court assumes the facts above based on the allegations in plaintiff's complaint.

1

Christopher Buesgen, the deputy warden; Melinda Derus, a unit manager; Olivia Solberg, a social worker; Ashley Hakes, a psychologist and the head of the Psychological Services Unit ("PSU"); and J Dougherty, Institution Complaint Examiner. He is also seeking to proceed against three Madison-based DOC employees: Cathy Jess, the DOC Secretary at the time Patrick filed his complaint; Brad Hompe, a Corrections Complaint Examiner; and Cindy O'Donnell, a staffer in Secretary Jess's office.

Patrick has been incarcerated at JCI since May 10, 2018. In June, his wife, Alicyn Keller ("Alicyn") applied to add herself and Patrick's two biological children (Alicyn's stepchildren) to Keller's visitor list. That request was denied on June 29, as was their follow up application on August 9. Patrick claims that Derus, Tegels, Solberg and Hakes were each involved in these denials, and that Jess and Tegels perpetuated the policies that deny him the right to visit his family. Patrick filed a grievance about the denials between July and August, and Dougherty, Hompe, Buesgen and O'Donnell were each involved in denying his grievance.

While Patrick's complaint provides few details of how defendants handled his requests and grievances, he attached their rulings to his complaint. Those documents reveal that the denials were unanimously recommended by all of the defendants because of Patrick's convictions for harming another child, and the fact that Alicyn had been convicted on the same charges. Specifically, Patrick and Alicyn has been convicted on three counts of causing mental harm to a child, Alicyn's biological child. Publicly available information about those proceedings confirm that they were both found guilty on those charges following a jury trial. *See State v. Patrick Keller*, Case No. 2016CF449 (Waukesha Cty. Jan. 26, 2018); *State v. Alicyn Keller*, Case No. 2016CF448 (Waukesha Cty. Jan. 26,

2

2018).

Based on that information, on July 6, 2018, J. Dougherty, the institution's complaint examiner, recommended dismissal of Patrick's grievance, reasoning that the warden had discretion to deny visitation for various reasons recognized in Wis. Admin. Code § DOC 309.08(4). Specifically, the reasons that Dougherty cited were: the "inmate's reintegration into the community or rehabilitation would be hindered" (309.08(4)(e)); "the inmate's offense history indicates there may a problem with the proposed visitation" (309.08(4)(f)); the proposed visitor (Alicyn) had been "incarcerated within the last twelve months" (309.08(4)(h)); the proposed visitor has provided false, incorrect or incomplete information (309.08(4)(b)); and "the warden has reasonable grounds to believe that the proposed visitor may be subjected to victimization" (309.08(4)(g)). Citing the warden's basis for believing that the children may be victimized and plaintiff's social worker, Solberg, recommendation to deny based on the nature of Patrick's offenses involving his stepdaughter, the grievance was dismissed on August 9, 2018.

Finally, on September 21, 2018, Warden Tegels explained in a letter to Alicyn that the decisions denying them visiting privileges was made after considering input from Patrick's probation agent, the housing unit team, PSU staff and other institution staff. Tegels emphasized that one of the key reasons for denial of visitation was "the indirect involvement of the children being allowed by Inmate Keller to refer to their autistic step sister as 'stinky.'" (Ex. F (dkt. #5-4).) Tegels further explained that they would be able to reapply for visitation in six months, expressing the hope that during this time period, Patrick would "avail himself [of] programming options which may better situate him to have visitation approved." (*Id.*)

3

OPINION

While plaintiff does not dispute any of the facts underlying his or Alicyn's convictions, he nevertheless claims that the ongoing refusal to honor his request to add his wife and children to his visitors list violates his constitutional rights. The Supreme Court has assumed that prisoners retain some right of intimate association while incarcerated, even though it recognized that "freedom of association is among the rights *least* compatible with incarceration" and, therefore, "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (emphasis added); *see also Mayo v. Lane*, 867 F.2d 374 (7th Cir. 1989) (assuming that prisoners retain limited constitutional right to associate with family members). In *Overton*, the Court held that the constitutionality of a prison policy restricting visitation privileges depended on whether the policy was reasonably related to legitimate penological interests. *Overton*, 539 U.S. at 132.

In the past, to determine whether a visitation policy impinged on the prisoners' constitutional rights, the Supreme Court applied a four-factor test set forth in *Turner v. Safley*, 482 U.S. 78 (1987): (1) whether a rational connection exists between the prison policy or regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Overton*, 539 U.S. at 132 (citing *Turner*, 482 U.S. at 89-91). This test has been applied to claims under both the First and Fourteenth Amendments. *Id.*; *see also Harris v. Donahue*, 175 F. App'x

746, 747-48 (7th Cir. 2006) (noting parents have liberty interest in having reasonable opportunity to develop close relations with their children and allowing prisoner to proceed on claim that denial of visitation impinged his right to due process) (citing *Hodgson v. Minnesota*, 497 U.S. 417, 483 (1990)); *Antepenko v. Litscher*, No. 16-cv-1233-pp, 2017 WL 87037, at *4 (E.D. Wis. Jan. 10, 2017) (allowing prisoner to proceed on claim that prison visitation policy denied him due process).  While dismissing a claim involving analysis under *Turner* at screening is generally disfavored, dismissal is appropriate in circumstances in which it is clear from the complaint and attachments that the restriction is justified. *Munson v. Gaetz*, 673 F.3d 630, 635 (7th Cir. 2012) (affirming dismissal of prisoner's challenge to restrictions on books because the attachments to the plaintiff's complaint made it clear that the books contained drug-related content, which the prison had a legitimate basis to prohibit); *see also Nouri v. County of Oakland*, 615 F. App'x 291, 298-99 (6th Cir. 2015) (affirming dismissal of challenge to visitation policy, as there was "no triable issue of fact on" plaintiff's claim that the policy violated *Overton*, since the policy was grounded in maintaining prison security and protecting minors from harm).

After considering the attachments to the complaint, the court can foresee no possibility by which a reasonable trier of fact would infer that JCI's denials of visitation rights were not reasonably related to legitimate penological interests.  To the contrary, with respect to the first *Turner* factor, the resolution of plaintiff's grievances and Tegels' September letter to Alicyn confirm that defendants had indisputable reasons for denying Patrick's wife and children visitation, each plainly related to legitimate penological interests set forth in DOC regulations and policies.  As to Alicyn in particular, defendants' concern that plaintiff's rehabilitation would be hampered by visiting with his wife is logical:

5

plaintiff is incarcerated for crimes he committed in concert with Alicyn and for which Alicyn herself had only recently been released.

While plaintiff was not convicted of causing mental harm to *his* children (as opposed to a non-biological, stepchild also in his case), it would be logical for prison staff to be concerned that his children may also become victims, particularly since the children had apparently been groomed by the defendant and his wife to participate in criminal behavior towards plaintiff's stepdaughter.  Indeed, Warden Tegels explained in his September 21 letter to Alicyn that plaintiff's children were indirectly involved with the events comprising the criminal charges, since Patrick allowed them to refer to the victim as "stinky."  In short, Tegels and the other defendants handling plaintiff's requests for visitation had multiple, undisputed justifications, grounded in DOC policies, to support what was their discretionary denials of those requests.

The remaining *Turner* factors further bolster defendants' denials.  Plaintiff has not suggested that he is unable to communicate with Alicyn and his children over the phone or through letter writing, meaning that they still have other means to foster their relationships.  As importantly, the denial was explicitly *not* permanent.  Indeed, Tegels suggested that plaintiff may seek to reapply to include Alicyn and his children to his visitor list in the future, provided that he make efforts at rehabilitation.   Therefore, the second prong is, at best, neutral, but appears to weigh in favor of defendants.

Finally, the third and fourth prongs of *Turner* both support defendants' denials.  JCI staffing resources would need to be devoted to monitoring plaintiff's visits with Alicyn and his children to ensure their safety and to thwart any further, inappropriate behavior by plaintiff and Alicyn, imposing an adverse impact on the prison.  Plaintiff has offered no

6

readily available alternative, further buttressing defendants' denials. *See Stojanovic v. Humphreys*, 309 F. App'x 48, 51-52 (7th Cir. 2009) (affirming judgment in defendants' favor where prisoner challenged denial of visitation with daughter and niece, but prisoner offered no obvious, less restrictive, alternatives).

ORDER

IT IS ORDERED that:

(1) Plaintiff Patrick Kelly is DENIED leave to proceed on any claim in this lawsuit, and this case is DISMISSED for failure to state a claim.

(2) The clerk of court is directed to enter judgment accordingly and close this case.

(3) Plaintiff is assessed a STRIKE for purposes of 28 U.S.C. § 1915(g) (barring a prisoner with three or more "strikes" or dismissals for filing a civil action or appeal that is frivolous, malicious, or fails to state a claim from bringing any more actions or appeals *in forma pauperis* unless he is in imminent danger of serious physical injury).

(4) Plaintiff's motions (dkt. ##2, 7) are DENIED.

(5) Plaintiff's motion to expedite (dkt. #12) is DENIED as moot.

Entered this 25th day of September, 2019.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge